UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUCHI RAJNIKANT PATEL, | ) |
| Plaintiff, | ) |
| v. | ) No. 24 C 8386 |
| | ) Judge Sara L. Ellis |
| ROBERT P. SANDERS, Consul General, U.S. Consulate General in Montreal, *et al.*, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Ruchi Pajnikant Patel ("Ms. Patel") filed this suit against the Consul General at the U.S. Consulate General in Montreal, Canada; the Deputy Chief of Mission at the U.S. Embassy in Canada; and the U.S. Secretary of State (together, the "Defendants") to compel action on her husband's I-130 visa application (the "Application"). Ms. Patel brings her claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1); the Mandamus Act, 28 U.S.C. § 1361; and the Due Process Clause of the U.S. Constitution. Defendants move to dismiss Ms. Patel's complaint, arguing that the Court lacks subject matter jurisdiction over Ms. Patel's claims and that Ms. Patel has failed to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Ms. Patel has plausibly alleged an APA claim, but her other claims cannot succeed based on the facts alleged, the Court grants in part and denies in part Defendants' motion to dismiss [10].

**BACKGROUND**[1]

**I.      Legal Background**

The Immigration and Nationality Act ("INA") governs the admission of noncitizens into the United States. 8 U.S.C. § 1101 *et seq.* Under the INA, a noncitizen who seeks to reside permanently in the United States, with a path to possible citizenship, must obtain an immigrant visa. *See Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 899 (N.D. Ill. 2024). One means of obtaining an immigrant visa is for a U.S. citizen to file a file a Form I-130 petition for a family-based immigrant visa with the United States Citizenship and Immigration Service ("USCIS"). 8 U.S.C. § 1154(a); 8 C.F.R. § 204.2.

Once USCIS reviews and approves the I-130 petition, the noncitizen must complete a Form DS-260 ("Application for Immigrant Visa and Alien Registration") and USCIS transfers the case to the U.S. Consulate so a consular officer can interview the potential visa recipient. *See* 8 U.S.C. §§ 1154(b), 1201(a), (h). At the conclusion of the interview between the consular officer and the noncitizen, the consular officer must either issue or refuse the visa. *See* 22 C.F.R. § 42.81(a) ("[T]he consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."). Under INA § 221(g):

---

[1] The Court takes the facts from Ms. Patel's complaint and presumes them to be true for the purposes of resolving Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Where appropriate, the Court considers facts raised by the parties outside in their motion to dismiss briefing to resolve Defendants' motion to dismiss. *See Apex Digit., Inc. v. Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a factual attack against jurisdiction, 'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) ("The party defending the adequacy of a complaint may point to facts in a brief or affidavit 'in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle h[er] to judgment.'").

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from the statements in the application . . . that such alien is ineligible to receive a visa. . . , (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . .

8 U.S.C. § 1201(g). Further, when a consular officer refuses to issue a visa, they must "inform the applicant of the provision of law or implementing regulation on which the refusal is based and any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b).

## II. Visa Petition and Application

Ms. Patel is a U.S. citizen residing in Illinois. In October 2021, Ms. Patel filed an I-130 visa petition for her husband, Utsavbhai Jashvantbhai Patel ("Mr. Patel"), with USCIS. Mr. Patel is a foreign national living abroad. USCIS approved the visa petition in April 2023.

Mr. Patel filed the Application. On January 22, 2024, a consular officer at the U.S. Consulate General in Montreal, Canada, interviewed Mr. Patel in connection with the Application. At the end of the interview, a consular officer informed Mr. Patel that his Application was refused and placed in administrative processing pursuant to INA § 221(g). Someone directed Mr. Patel to fill out and submit supplemental information on the DS5535 Form, and Mr. Patel submitted that form on January 23, 2024.

On March 5, 2024, Mr. Patel became a Canadian citizen. In February and March 2024, Mr. Patel emailed the U.S. Consulate General in Montreal, Canada, several times to inquire about the status of the Application, request the return of his Indian passport, and request that the U.S. Consulate utilize his new Canadian passport for the Application. The U.S. Consulate

3

General in Montreal, Canada responded, in relevant part, with the following information on March 19, 2024:

> While we cannot predict when the processing of your visa will be completed, please be assured that the Consulate and the State Department are aware of your concerns and will contact you as soon as the processing is complete.

Doc. 1 at 7. The U.S. Consulate General in Montreal also provided the following response on April 16, 2024:

> Please confirm if you want us to continue processing your Immigrant Visa application with your Canadian passport, and if so, please provide us with a copy of your Canadian passport's biodata information page.

*Id.* Mr. Patel submitted the requested documentation in April 2024.

In July 2024, the U.S. Consulate General in Montreal sent the following response to Mr. Patel after he sent an email inquiring about the Application:

> Your case was refused under section 221(g) of the Immigration and Nationality Act and is currently under administrative processing. As soon as the administrative processing is complete, the Visa Unit will advise of the next steps if anything else is needed to complete processing the case . . . The duration of administrative processing will vary based on the individual circumstances of each case . . . While we cannot predict when the processing of your visa will be completed, please be assured that the Consulate and the State Department are aware of your concerns and will contact you as soon as the processing is complete.

*Id.* at 7–8.

The U.S. Department of State Consular Electronic Application Center ("CEAC") Visa Status Check portal shows the status of the Application as refused, with the following message:

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete.

4

> Please be advised that the processing time varies and that you will be contacted if additional information is needed.

Doc. 11 at 4; Doc. 14-3 at 1.

Ms. Patel and Mr. Patel have experienced some hardships due to the delay in the processing of the Application. They have faced emotional difficulties due to living separately and the uncertainty of the Application, and it has delayed their plans to have children. Their emotional difficulties have impacted their employment and relationship with family and friends. They also face financial costs from visiting each other and maintaining two separate households.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Where, as here, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex*, 572 F.3d at 444–45; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Mootness/Standing

First, Defendants argue that the Court must dismiss Ms. Patel's complaint because a consular officer already reviewed and refused the Application, mooting her claims that government officials have failed to make a determination on the Application. Ms. Patel contends that the refusal pending administrative processing was not a final adjudication of the Application.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). As a result of this, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Standing is one such component of the case-or-controversy requirement and "requires a threefold demonstration of '(1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court.'" *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 622 (7th Cir. 2019) (quoting *Parvati Corp. v. Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010)). A plaintiff must meet the injury in-fact requirement throughout the federal litigation, "lest a case or controversy cease to exist and become moot." *Id.* (citations omitted). For a plaintiff to show an injury in-fact, she must demonstrate that she "suffered 'an

invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The parties devote some argument to whether the legal issue present here is one of mootness, non-reviewability, or standing. *See* Doc. 14 at 6; Doc. 15 at 5. The Supreme Court advises that the distinction between standing and mootness matters because a plaintiff bears the burden to show standing exists when a case commences and the defendant "bears the burden to establish that a once-live case has become moot." *See West Virginia v. EPA*, 597 U.S. 697, 720 (2022) (citations omitted). The Court finds the relevant legal question, regarding Ms. Patel's ability to bring this suit, is one of standing because the consular official refused the Application, pending further administrative processing, before Ms. Patel filed the instant lawsuit and, as far as the Court is aware, no material facts have changed since Ms. Patel filed this case. Reframing this dispute as one of standing, the key question is whether Ms. Patel has suffered the injury of which she complains, namely not receiving a final determination on the Application, such that this Court could order Defendants to provide a final determination. Alternatively, Ms. Patel may have already received a final determination, and if so, this Court cannot order Defendants to do something that has already occurred.[2] *See Shahi v. U.S. Dep't of State*, 33 F.4th 927, 931 (7th Cir. 2022).

Applicable law requires consular officers to review and adjudicate all visa applications "within a reasonable time" until they are "conclude[d]." *See* 5 U.S.C. § 555(b); 8 U.S.C. § 1202(b). Courts enforce this requirement, where appropriate. *See* 28 U.S.C. § 1361 ("The

---

[2] The Court recognizes that Defendants argue that the Court cannot review this case due to the doctrine of consular nonreviewability. That argument, however, does not implicate standing; rather, it is a merits-based issue, which the Court addresses further below. *See Matushikina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) (making a standing determination, stating that it was moving onto the merits, and then addressing consular nonreviewability).

district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."); 5 U.S.C. § 706(1) (under the APA, a reviewing court has the power to "compel agency action unlawfully withheld or unreasonably delayed").

In analogous cases, courts in this district have reached different conclusions as to whether a refusal from a consular official is a conclusive determination where the consular official refers a visa application for additional administrative processing. *Compare Ebrahimi*, 732 F. Supp. 3d at 903–05 (finding even after the consular officer had refused the visa petition, the plaintiff had standing to seek a determination of a visa petition because the State Department had communicated that the petition "will receive another adjudication"), *with Nasir v. U.S. Dep't of State*, 749 F. Supp. 3d 938, 942–44 (N.D. Ill. 2024) (finding that where a consular officer refused a visa petition, but put the petition through additional security screening, the plaintiff lacked standing to seek a determination). The reasoning in these cases is helpful.

In *Ebrahimi*, "not only was Akbar's application refused for administrative processing under Section 221(g), but the State Department also later informed him that further adjudication would be necessary." 732 F. Supp. 3d at 904. More specifically, he received a notice from the State Department that stated "[y]ou *will* receive another adjudication once such [administrative] processing is complete." *Id.* (emphasis in original). The court reasoned that the State Department's "use of 'will'" "all but guarantees [the applicant] another adjudication" and differentiated the case from a simple refusal under Section 221(g) without more. *Id.*

By comparison, in *Nasir*, while the consular officer requested additional information from the individual seeking a visa, there was no promise of an additional determination. *See* 749 F. Supp. 3d at 940, 942. Rather, the consular officer merely informed the applicant that the

8

application would undergo further security screening. *Id.* at 942. However, the court did note that under the statutory scheme, "[t]here is no mechanism for the consular officer to put the application on hold following an interview, pending some other 'final decision' not described in the regulations." *Id.* (citation omitted).

Other courts to face similar circumstances have also reached differing conclusions. *Compare Elhabash v. U.S. Dep't of State*, No. 09-5847, 2010 WL 1742116, at *2–3 (D.N.J. Apr. 27, 2010) (finding that the court lacked subject matter jurisdiction to review a case where a visa application was refused, but embassy staff told the plaintiff that his application was not refused and was undergoing administrative processing), *with Khazaei v. Blinken*, No. 23-1419, 2023 WL 6065095, at *2–4 (D.D.C. Sept. 18, 2023) (finding that the court could review cases where plaintiffs' visa applications were refused pending further administrative processing because "the Department's review of their applications is not complete").

Here, the Court finds that the circumstances in this case more closely resemble *Ebrahimi* than *Nasir*, and that the government's communications to Ms. and Mr. Patel render this case not simply one of a refusal to issue the visa. The communications stated unequivocally that the Application was still under review and would receive a final determination. Mr. Patel received communications from the U.S. Consulate General in Montreal stating that the processing of the Application was ongoing and that he would receive notice when the government entities finished their review. Further, the U.S. State Department CEAC states that if a consular officer informed Mr. Patel that his case was refused for administrative processing, that he "will receive another adjudication once such processing is complete." Doc. 14-3 at 1. Together, this sufficiently establishes that the government has not "conclude[d]" its review and adjudication of the Application such that Ms. Patel has an injury that this Court can redress, and therefore she has

9

standing to bring this case. *See* 5 U.S.C. §§ 555(b), 706(1); 8 U.S.C. § 1202(b); 28 U.S.C. § 1361; *Ebrahimi*, 732 F. Supp. 3d at 904–05.

## II. Consular Nonreviewability

Finding that Ms. Patel has standing does not end the Court's inquiry. Next, the Court turns to the application of the doctrine of consular nonreviewability. Consular nonreviewability is the concept that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (citation omitted). More specifically, where Congress delegates to "executive officials the discretionary authority to admit noncitizens," the action of that executive official "to admit or exclude" the noncitizen is "immune from judicial inquiry or interference" and "final and conclusive." *Id.* at 907–08; *see also Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) ("Consular nonreviewability is the general rule that decisions to issue or withhold a visa are not reviewable in court unless Congress says otherwise." (internal quotation marks omitted)).

Courts have reached divergent outcomes on whether consular nonreviewability applies in cases where a consular officer refuses a visa application but refers the visa application for further adjudication, with the majority of courts concluding that consular nonreviewability does not apply in these circumstances. *Compare Jama v. Wahid*, No. 24 C 283, 2025 WL 346811, at *6 (E.D. Wis. Jan. 30, 2025) ("Recognizing the non-final nature of many of these section 221(g) 'refusals,' cases that address section 221(g) refusals that are 'followed by assurances of further adjudication . . . overwhelmingly conclude the doctrine of consular nonreviewability does not apply.'") (accumulating cases), *with Nasir*, 749 F. Supp. 3d at 943–44 (finding that consular nonreviewability barred review because the consular officer had made a decision with regards to

a visa application, even if the consular officer referred the application for further administrative processing). This Court joins with the majority and finds that consular nonreviewability does not apply because the challenge here is not a challenge to Defendants' admittance or refusal of Mr. Patel, rather it is based on the delay Mr. Patel is experiencing because Defendants have not rendered a conclusive decision on the Application.

## III. APA and Mandamus Claims

Defendants also argue that Ms. Patel fails to state APA and mandamus claims because the law does not entitle Mr. Patel to any visa, there is no statutory deadline for the government to reach a decision on the Application, and the delay in making a decision on the Application is not unreasonable.

First, the Court finds that Ms. Patel's mandamus claim fails because she has another adequate remedy. Mandamus relief is an extraordinary remedy that this Court may only provide to a plaintiff who demonstrates: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) that no other adequate remedy is available." *Romero v. Scott*, No. 24 C 4372, 2025 WL 815071, at *3 (N.D. Ill. Mar. 12, 2025) (quoting *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017)). Here, Ms. Patel has standing to pursue an APA claim, which permits her to request that this Court compel a government actor to take action when something has been unreasonably delayed. *See* 5 U.S.C. § 706(1). Because Ms. Patel has an adequate remedy under the APA, even if she could make out the first two elements for mandamus relief, she could not make out the third. *See, e.g.*, *Jama*, 2025 WL 346811, at *8 ("Because Jama may (and does) seek to compel the same action under the Administrative Procedure Act as she seeks to compel via mandamus, the Court dismisses Jama's claim for a writ of mandamus[.]"); *Lubega v. Mayorkas*, No. 23 C 17177, 2024 WL 4206425, at

11

*1 (N.D. Ill. Sept. 11, 2024) ([T]he mandamus claim fails, as it often does in these cases, because there is an available avenue for relief under the APA."); *Ebrahimi,* 732 F. Supp. 3d at 908 (dismissing the mandamus action as duplicative of the APA action). Further, Ms. Patel did not indicate in her response to Defendants' motion that she meets the requirements for her mandamus claim. *See Romero,* 2025 WL 815071, at *3 (finding that where the plaintiff's brief was silent as to whether the plaintiff satisfied the requirements for mandamus relief, the mandamus claim failed). Because Ms. Patel has failed to state a mandamus claim, the Court grants Defendants' motion to dismiss her mandamus claim.

In turning to Ms. Patel's APA claim, the Court notes that consular officers have a nondiscretionary duty to conclude their adjudication of visa applications within a reasonable time. *See, e.g.*, *Karbasian v. U.S. Dep't of State*, No. 24 C 1484, 2025 WL 821597, at *5–8 (S.D. Ill. Mar. 14, 2025) (reviewing applicable authority to find that a consular officer has a non-discretionary duty to conclude the review of a visa application within a reasonable time, including where an application is reviewed for further administrative processing and accompanied by assurances of further adjudication). Courts in the Seventh Circuit frequently apply the six "*TRAC*" factors identified in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984), when determining whether a delay in processing a visa application constitutes an "unreasonable delay" under § 706(1) of the APA. *See, e.g.*, *Karbasian*, 2025 WL 821597, at *11; *Romero*, 2025 WL 815071, at *3–4; *Jama*, 2025 WL 346811, at *8–9; *Ebrahimi*, 732 F. Supp. 3d at 909; *see also Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions."). The six *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80 (citations omitted).

Ms. Patel argues that the Court should not apply the *TRAC* factors because they are fact-intensive such that it would be inappropriate to apply the test at the motion to dismiss stage. The Court acknowledges Ms. Patel's concern that the Court should reserve the question of whether disputes of material fact exist for summary judgment, and that the application of such fact-intensive factors is better suited for that procedural stage. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). However, this does not mean the Court cannot use the *TRAC* factors to address whether Ms. Patel has alleged facts sufficient to state a plausible claim for unreasonable delay at this stage. The Court therefore uses the *TRAC* factors to evaluate whether Ms. Patel has stated a plausible claim. *See Romero*, 2025 WL 815071, at *4 ("Courts routinely analyze the [*TRAC*] factors in immigration cases at the motion to dismiss stage, and the Court will do so here.") (accumulating cases).

### A. Factors One and Two

The "first and most important" factor is whether a cognizable "rule of reason" governs the "time the agencies take to make decisions." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). Courts often analyze the second *TRAC* factor, whether any congressionally imposed timetable or indication of expected speed exists, with the first factor "because they both analyze whether there is 'sufficient rhyme and reason to explain the Government's response time.'" *Ebrahimi*, 732 F. Supp. 3d at 911 (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21 C 1262, 2021 WL 5998385, at *7 (D.D.C. Dec. 20, 2021)). Defendants argue that they review visa applications in the order Defendants receive them and that no congressionally imposed timetable for reviewing visa applications exists. Ms. Patel responds by arguing that Defendants do not use a first in, first out review process for visa applications delayed in administrative processing. Rather, she argues that the duration of the administrative processing varies based on the individual circumstances of each case. She supports this argument with references to a statement on the State Department's website and testimony from a State Department official. Further, she acknowledges that there is no congressionally set deadline for Defendants to process a visa application, but she also argues that the language of 8 U.S.C. § 1571(b) supports that Congress expressed that Defendants should process immigration visa applications within six months, and a later November 2021 cable directed Defendants to adjudicate spousal visas in thirty days.

Because this case is at the motion to dismiss stage, the Court must accept the facts in the complaint as true, in the light most favorable to Ms. Patel, and consider the facts she offers in her response brief that elaborate on the facts in her complaint. *See Hanna*, 834 F.3d at 779 ("The party defending the adequacy of a complaint may point to facts in a brief or affidavit 'in order to

show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle h[er] to judgment.'"). Ms. Patel pleaded that the U.S. Consulate General in Montreal sent the following communication to Mr. Patel: "The duration of administrative processing will vary based on the individual circumstances of each case." Doc. 1 at 8. This alleged fact, in addition to Ms. Patel's additional explanations in her briefing that Defendants do not review visa applications in the order they receive them after Defendants refer the visa applications for administrative processing, plausibly alleges that Defendants do not apply a rule of reason to administrative processing. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 341 (D.C. Cir. 2023) (reviewing the plausibility of plaintiffs' argument that USCIS was not using its stated first-in, first-out rule). Altogether, taking the evidence in the light most favorable to the plaintiff, the first factor weighs in favor of Ms. Patel.

The Court thus turns to factor two. Defendants are correct that "[t]here is no congressionally mandated timeline for resolving visa adjudications." *Jama*, 2025 WL 346811, at *9 (accumulating cases); *Zadeh v. Blinken*, No. 23 C 3721, 2024 WL 2708324, at *10 (N.D. Ill. May 20, 2024) (similar). However, the *TRAC* analysis requires only an "indication of the speed with which [Congress] expects the agency to proceed in the establishing statute." *TRAC*, 750 F.2d at 70. 8 U.S.C. § 1571(b) expressly states that it was Congress' "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Section 1571(b) applies to USCIS, however, so its application to Defendants in this case is questionable, and, moreover, it "is aspirational, rather than mandatory." *E.g.*, *Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024) (quoting *Shen v. Pompeo*, No. 20-cv-1263, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021)). Similarly, while the Secretary of State's memo advises that a "post should strive to

15

process immediate relative cases . . . within 30 days," this statement is also aspirational. Memorandum from Secretary of State, 21 State 115378 (Nov. 16, 2021); *see also* Consolidated Appropriations Act, Pub. L. No. 106-113, § 237, 113 Stat. 1501, app. G at 1501A-430 (2000) ("It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of the receipt of all necessary documents[.]"). The Court takes the authorities Ms. Patel raises into account, with the understanding that these sources of guidance are not binding and "the unreasonable delay analysis 'does not rise and fall' on those timelines." *Jama*, 2025 WL 346811, at *10 (citation omitted); *Vang v. Franceschi*, No. 24-cv-609, 2024 WL 4370855, at *10 (E.D. Wis. Oct. 2, 2024) (similar).

Because Congress has not provided a particular timeline, the Court looks to caselaw to guide its analysis of factor two, with a focus on the length of time this particular plaintiff has waited for a decision. *Ebrahimi*, 732 F. Supp. 3d at 911 (citing *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21 C 376, 2021 WL 4191958, at *5 (D.D.C. Sept. 15, 2021)). "No bright lines have been drawn in this context, but '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Sarlak v. Pompeo*, No. 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (alteration in original) (quoting *Yavari v. Pompeo*, No. 19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)) (collecting cases).

Here, a consular officer interviewed Mr. Patel in January 2024, and placed the Application in administrative processing at that time. Approximately fifteen months have passed since that time. "This [C]ourt is not aware of any decision by any court concluding that an adjudication taking fewer than two years amounts to an unreasonable delay." *Ebrahimi*, 732 F.

Supp. 3d at 911 (accumulating cases); *see also Zadeh*, 2024 WL 2708324, at *10 ("[A] review of the case law suggests that a delay of little over a year is insufficient, by a wide margin."). The Court therefore finds that the second factor favors Defendants. *See, e.g.*, *Jama*, 2025 WL 346811, at *10 (finding that a delay of fourteen months was not so long as to favor the plaintiff); *Ebrahimi*, 732 F. Supp. 3d at 911 (finding that a twelve-month delay while an application was in administrative processing did not favor the plaintiff).

    B.     **Factors Three and Five**

Courts often consider the third and fifth *TRAC* factors, which assess "the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay," together. *Zadeh*, 2024 WL 2708324, at *10 (*quoting Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005)). When completing this assessment, "courts have repeatedly recognized that the visa applicant's 'health and welfare' cannot be considered in a vacuum; rather, plaintiffs'-petitioners' interests must be considered alongside the interests of those who are similarly situated." *Ebrahimi*, 732 F. Supp. 3d at 912 (accumulating cases). Ms. Patel alleges that she and Mr. Patel have experienced emotional, personal, and financial hardships due to the delay in Defendants' processing of the Application. Courts in this circuit have generally found that the strains of separation of married couples, such as Ms. and Mr. Patel in this case, are "not unlike those of many if not all visa applicants," and, as a result, the third and fifth *TRAC* factors only slightly favor the plaintiff. *E.g.*, *Jama*, 2025 WL 346811, at *10–11 (finding that the third and fifth factors only slightly favored a plaintiff who alleged that separation from her husband worsened her depression and hyperthyroidism; prevented her from being able to have children with her husband; negatively impacted her education and work; and imposed financial expenses); *Zadeh*, 2024 WL 2708324, at *10–11 (accumulating cases).

17

Other courts have found that harms like those Ms. Patel alleges in this case cause the third and fifth factors to weigh in favor of the plaintiff. *See, e.g., Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) ("The Court does not take lightly Abbasi and her fiancé's interest in marrying and living together in the United States, and it reminds the government that it must treat Abbasi's case with 'the sense of urgency one would expect when familiar interests are at stake.'") (citation omitted). Likewise, the Court finds that factors three and five favor Ms. Patel.

### C. Factor Four

For the fourth factor, "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80 (citation omitted). Defendants argue that this factor favors them because Ms. Patel is essentially asking to "jump ahead" of others in line to have the Application adjudicated. Doc. 11 at 14. Ms. Patel argues that Defendants do not show that reviewing the Application would harm their ability to review other applications, because there is no indication that Defendants conduct administrative processing in a linear queue. The Seventh Circuit has expressed concern regarding visa applicants attempting to jump ahead of others who filed an application before them and who are also waiting for adjudication. *See Calderon-Ramirez*, 877 F.3d at 275–76. Further, other courts have found that "[c]onsular 'processing capacity is presently a zero-sum game,' so granting [a plaintiff] relief 'would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own.'" *Lee*, 2024 WL 639635, at *6 (citation omitted). The Court does not have sufficient evidence to resolve Ms. Patel's arguments that processing the Application would not impact other applicants, and Ms. Patel has not pleaded any facts related to this issue. "[A]t the motion to dismiss stage[,] the court lacks sufficient evidence to assess the

agency's adjudication process and its effect on other applicants." *Jama*, 2025 WL 346811, at *11 (accumulating authority). For this reason, the Court finds that the fourth factor is neutral.

### D. Factor Six

The *TRAC* factors do not require an allegation of bad faith to find unreasonable delay. *See Sarlak*, 2020 WL 3082018, at *6. And here, Ms. Patel did not plead bad faith or impropriety, although she argues the Court can infer bad faith from Defendants' actions. The Court, therefore, finds that the sixth factor is neutral at this stage.

Altogether, because *TRAC* factors one, three, and five favor Ms. Patel; factors four and six are neutral, and factor two favors Defendants, the Court finds that Ms. Patel has stated a plausible APA claim. The Court thus denies Defendants' motion to dismiss Ms. Patel's APA claim. *See Barker v. U.S. Citizenship & Immigr. Servs.*, No. 8:23-cv-597, 2023 WL 7107257, at *5 (C.D. Cal. Sept. 11, 2023) (denying a motion to dismiss an APA claim where five *TRAC* factors favored the plaintiff and one factor favored Defendants, placing particular emphasis on the first factor); *Lyons v. U.S. Citizenship & Immigr. Servs.,* No. 21-cv-3661, 2023 WL 144879, at *9 (S.D.N.Y. Jan. 10, 2023) (denying a motion to dismiss an APA claim where the four TRAC factors favored the plaintiff, and two TRAC factors were neutral at the motion to dismiss stage, with emphasis on the first factor favoring the plaintiff).

### IV. Due Process Claim

Finally, the Court finds that Ms. Patel's procedural due process claim fails. "An essential component of a procedural due process claim is a protected property or liberty interest." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (citation omitted). In *Department of State v. Muñoz*, the Supreme Court held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the county." 602 U.S. at 909. In defense of her due process

claim, Ms. Patel only raises two sentences of general statements about her rights as a U.S. citizen to have federal agencies abide by federal law. She does not identify how her stated position overcomes *Muñoz* or how Defendants' process for reviewing visa applications does not afford due process. In sum, because Ms. Patel does not identify any specific property or liberty interest at issue in this case, she fails to state a plausible procedural due process claim. *See Jama*, 2025 WL 346811, at *12–13 (rejecting a Fifth Amendment procedural due process claim as the plaintiff did not have a liberty interest in their spouse's admittance into the United States); *Nasir*, 749 F. Supp. 3d at 944 (rejecting a due process claim because the plaintiff had "no due process right to the prompt adjudication of her father's visa"). The Court, therefore, grants Defendants' motion to dismiss Ms. Patel's due process claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [10]. The Court dismisses Ms. Patel's Mandamus Act and Fifth Amendment Due Process claims, while allowing her APA claim to proceed.

Dated: April 7, 2025

_____
SARA L. ELLIS
United States District Judge